UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | VIOLATION: |
| | : | 18 U.S.C. § 371 |
| MYTHILI GOPAL, | : | (Conspiracy) |
| | : | |
| Defendant. | | |

### INFORMATION

The United States Attorney charges that:

### COUNT ONE

At all times material to this Information:

1.  Cirrus Electronics ("Cirrus") was in the business of acquiring electronics components in the United States and exporting them to Government of India enterprises in India. It did business as Cirrus Electronics LLC ("Cirrus U.S.A."), with offices at 201 Huddersfield Drive and 22 Redglobe Court, Simpsonville, South Carolina; Cirrus Electronics Pte Ltd. ("Cirrus Singapore"), with an office at Level 3, ECON Building, No. 2, Ang Mo Kio Street 64, Ang Mo Kio Industrial Park 3, Singapore; and Cirrus Electronics Marketing (P) Ltd. ("Cirrus India"), with an office at #303, Suraj Ganga Arcade, 332/7, 15th Cross 2nd Block, Jayanagar, Bangalore, India.

2.  Cirrus maintained a website at www.cirruselectronics.com. The website contained photographs of rocket launchers and fighter aircraft. It stated that "Cirrus not only specializes in sourcing MIL [military] components that are marked discontinued by the original manufacturer but also acts as one stop distributors for all generic and military grade electronic and electro mechanical components from world wide sources."

3.    Parthasarathy Sudarshan founded Cirrus in Singapore in 1997. He held himself out to be Cirrus' CEO, Managing Director, and President and Group Head. In or around December 2004, he moved from Singapore to the United States and, while residing lawfully in the United States, worked out of Cirrus U.S.A.'s offices in Simpsonville, South Carolina.

4.    Defendant **MYTHILI GOPAL,** a lawful permanent resident of the United States, was Cirrus' International Sales Manager. In or around November 2003, she opened Cirrus U.S.A. in Simpsonville, South Carolina.

5.    AKN Prasad formally opened Cirrus India in Bangalore in or around August 2004 and was CEO of India Operations.

6.    Sampath Sundar was Cirrus' Director of Operations and worked principally out of Cirrus Singapore's office.

7.    Co-Conspirator S.K. was Director of Marketing for Cirrus India.

8.    Co-Conspirator G.S. was a Marketing Manager for Cirrus India.

9.    The United States Department of Commerce, located in the District of Columbia, was responsible for reviewing and controlling the export of certain goods and technologies from the United States to foreign countries. The Export Administration Act ("EAA"), 50 U.S.C. App. §§ 2101-2420, authorized the Department of Commerce to prohibit or curtail the export of any goods and technology as necessary, to protect, among other things, the national security and foreign policy of the United States. The Department of Commerce implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774. Although the EAA had lapsed, the EAR continued to be in effect under the provisions of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, and by virtue of

Executive Order 13222 (August 17, 2001), as extended by successive Presidential notices.

10. The Department of Commerce authorized the exportation of goods and technology to restricted countries and foreign end-users through the issuance of a license. Any export of goods from the United States to a restricted country or foreign end-user without such a license was a violation of the EAR.

11. Supplement No. 4 to Part 744 of the EAR contained a list (hereinafter the "Entity List") that included certain Indian government, quasi-governmental, and private entities that the Department of Commerce determined to be involved in nuclear or missile activities. These activities posed a risk to the foreign policy and national security of the United States because of their significance for nuclear explosive purposes and for the delivery of nuclear devices. Pursuant to the EAR, the Department of Commerce ordinarily required individuals and companies seeking to export goods from the United States to consignees on the Entity List first to obtain a license from the Department of Commerce in the District of Columbia.

12. The Vikram Sarabhai Space Centre ("VSSC") was within the Department of Space of the Government of India. It was responsible for the research, development, and production of the Government of India's space launch vehicles. These activities encompassed both civilian spacecraft and ballistic missiles. VSSC was on the Entity List.

13. Bharat Dynamics Ltd. ("BDL") was within the Ministry of Defence of the Government of India. The Indian Ministry of Defence had formed BDL in 1970 for the production of guided missiles and related defense equipment. It was the prime production agency for missile weaponry systems under India's Integrated Guided Missile Program. BDL

was on the Entity List.

14. The WS512K32N-17H1QA and WS512K32N-17H1IA were Static Random Access Memory computer chips ("SRAMs") manufactured by a company in Phoenix, Arizona. They were designed to withstand extreme changes in temperature and had applications in missile guidance systems. The Department of Commerce required a license for the export of the WS512K32N-17H1QA and WS512K32N-17H1IA SRAMs to VSSC.

15. The 5962-9461110HTA was an SRAM that was manufactured by a company in Austin, Texas, and that was equivalent to both the WS512K32N-17H1QA and the WS512K32N-17H1IA SRAMs. The 5962-9560004MXA was another SRAM that the company in Austin, Texas, manufactured. The Department of Commerce required a license for the export of the 5962-9461110HTA and the 5962-9560004MXA SRAMs to VSSC.

16. The T110C475K100AS was a capacitor. Capacitors stored and discharged electrical current and had applications in missile guidance and firing systems. The Department of Commerce required a license for the export of the T110C475K100AS to BDL.

17. The CD4043BF3A was a semi-conductor and had applications in missile guidance and firing systems. The Department of Commerce required a license for the export of the CD4043BFA to BDL.

18. The JAN1N3611 was a rectifier. Rectifiers changed alternating current to direct current and had applications in missile guidance and firing systems. The Department of Commerce required a license for the export of the JAN1N3611 to BDL.

19. The M8340109K6801GC was a resistor. Resistors regulated the flow of electric current and had applications in missile guidance and firing systems. The Department of

Commerce required a license for the export of the M8340109K6801GC to BDL.

20. The Tejas Light Combat Aircraft was an advanced fighter jet that the Government of India was developing.

21. The Aeronautical Development Establishment ("ADE") was an enterprise within the Government of India Ministry of Defence and was responsible for developing the Tejas Light Combat Aircraft.

22. Co-Conspirator A was a Government of India official located in the District of Columbia.

23. The export of certain items and services, known as defense articles and services, was governed by the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130. These items or services were set forth in and constituted the United States Munitions List ("Munitions List") codified at 22 C.F.R. § 121.1. Pursuant to Section 2778(b)(2) of the AECA, no defense article and services designated by the President of the United States under the statute and regulations cited above could be exported without a license issued in accordance with AECA and the ITAR. The United States Department of State, Directorate of Defense Trade Controls ("DDTC"), located in the District of Columbia, had responsibility for issuing licenses for the export of defense items and services. In addition, exporters in the United States of defense items and services were required to register with DDTC.

24. The i960 Intel Microprocessor ("i960 microprocessor") was manufactured by a vendor in Newburyport, Massachusetts, under license from Intel. The i960 microprocessor had applications in the navigation and weapons guidance systems of the Tejas Light Combat Aircraft.

The i960 was a defense article on the Munitions List and could not be exported from the United States to ADE in India without the exporter first obtaining a license from the DDTC.

25. The M39014/01-1284, the M39014/01-1299, the M39014/01-1317, the M39014/01-1535, and the M39014/01-1553 were capacitors. These items were defense articles on the Munitions List and could not be exported from the United States to VSSC in India without the exporter first obtaining a license from the DDTC.

## The Conspiracy

26. Beginning in or around November 2003 and continuing through in or around September 2006, within the District of Columbia and elsewhere, the defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan, AKN Prasad, Sampath Sundar, and others known and unknown to the United States Attonrey, knowingly combined, conspired, confederated, and agreed with each other (1) to violate IEEPA and the EAR by exporting critical electronic components to Entity List organizations in India without first obtaining licenses from the Department of Commerce, located in the District of Columbia; and (2) to violate AECA and the ITAR by exporting defense articles on the Munitions List to India without first obtaining licenses from the Directorate of Defense Trade Controls, located in the District of Columbia..

## Objects of the Conspiracy

27. The objects of the conspiracy were:

    a. to make money for Cirrus and its owners and employees;

    b. to supply Government of India enterprises on the Entity List with critical electronic components needed in the production of missiles and missile launch vehicles;

      c.      to supply ADE with a critical component in the navigation and weapons guidance systems of the Government of India's Tejas Light Combat Aircraft;

      d.      to evade the prohibitions and licensing requirements of IEEPA and the EAR and of AECA and the ITAR; and

      e.      to conceal the prohibited transactions from detection by the United States government so as to avoid penalties.

### Manner and Means of the Conspiracy

28.     The conspirators would and did use the following manner and means, among others, to accomplish the objects of the conspiracy:

      a.      Cirrus received orders from Entity List organizations in India for U.S. origin electronic components that these organizations were restricted from receiving pursuant to the EAR;

      b.      Defendant, **MYTHILI GOPAL,** and Parthasarathy Sudarshan and Sampath Sundar contacted vendors in the United States and negotiated purchases of the electronic components on behalf of the Indian Entity List organizations;

      c.      AKN Prasad served as the liaison between Cirrus and the Entity List organizations in India;

      d.      Parthasarathy Sudarshan and Sampath Sundar provided false end-user certificates to certain vendors that concealed the fact that an Indian Entity List organization was the true recipient of the products;

      e.      In order to conceal from the United States government that electronic components were being exported to Entity List organizations in India, defendant, **MYTHILI**

**GOPAL,** and Parthasarathy Sudarshan and Sampath Sundar caused certain vendors in the United States to ship the components to Cirrus Singapore. Upon arrival of the commodities in Singapore, Cirrus Singapore re-exported them to the Entity List customers in India;

    f.  When vendors in the United States did not inquire whether Cirrus U.S.A. was purchasing electronic components for export, defendant, **MYTHILI GOPAL,** and Parthasarathy Sudarshan and Sampath Sundar refrained from revealing the true destination of the products and caused those vendors to ship their goods to Cirrus U.S.A. in Simpsonville, South Carolina, so as further to conceal from the United States government that electronic components were being exported to Entity List organizations in India. After the products arrived in South Carolina, defendant, **MYTHILI GOPAL** and others associated with Cirrus U.S.A. repackaged the goods and shipped them to Cirrus Singapore. Upon arrival of the items in Singapore, Cirrus Singapore re-exported them to Entity List customers in India.

    g.  No export licenses were obtained from the Department of Commerce in the District of Columbia for exports of electronic components to Entity List organizations in India.

    h.  Parthasarathy Sudarshan met in India with officials from the Ministry of Defence and ADE and coordinated the acquisition of 500 i960 microprocessors for the Tejas Light Combat Aircraft.

    i.  Parthasarathy Sudarshan and Sampath Sundar communicated and negotiated with a vendor in Newburyport, Massachusetts, in order to arrange the purchase of 500 i960 microprocessors for export to ADE for use in the navigation and weapons guidance systems

of the Tejas Light Combat Aircraft.

  j.  In arranging for the purchase of the 500 i960 microprocessors for ADE, defendant, **MYTHILI GOPAL** and Parthasarathy Sudarshan coordinated with and took directions from Co-Conspirator A, a Government of India official located in the District of Columbia.

  k.  In arranging for the purchase of the 500 i960 microprocessors for ADE, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan coordinated with and took directions from officials with ADE in India.

  l. AKN Prasad served as a liaison between Cirrus and ADE in India.

  m.  Defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan, Sampath Sundar, and AKN Prasad also acquired defense articles on the United States Munitions List for export to VSSC.

  n.  In order to conceal from the United States government that the i960 microprocessors were being exported to ADE in Indi,a Parthasarathy Sudarshan and Sampath Sundar caused the vendor in Newburyport, Massachusetts, to ship the items to Cirrus Singapore. Upon arrival of the goods in Singapore, Cirrus Singapore re-exported them to ADE in India.

  o.  In order to conceal from the United States government that Cirrus was acquiring defense articles on the United States Munitions List for VSSC, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan caused a vendor in Pompano Beach, Florida, to ship its products to Cirrus U.S.A. in Simpsonville, South Carolina. After the products arrived in South Carolina, defendant, **MYTHILI GOPAL**, and others associated with Cirrus U.S.A. repackaged the goods and shipped them to Cirrus Singapore. Upon arrival of the items in Singapore, Cirrus

Singapore re-exported them to VSSC in India.

      p.      Cirrus U.S.A. did not register with the Directorate of Defense Trade Controls in the District of Columbia as an exporter of defense articles on the United States Munitions List.

      q.      No export licenses were obtained from the Directorate of Defense Trade Controls in the District of Columbia for exports of defense articles on the United States Munitions List to ADE and VSSC in India.

### Overt Acts

29.    In furtherance of this conspiracy, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan, AKN Prasad, and Sampath Sundar, and other co-conspirators committed overt acts, including but not limited to the following:

    (1)    On or about November 19, 2003, defendant, **MYTHILI GOPAL**, incorporated Cirrus U.S.A. in the State of South Carolina.

    (2)    On or about February 12, 2004, defendant, **MYTHILI GOPAL**, sent an e-mail to Co-Conspirator A in the District of Columbia in which she discussed travel arrangements for Co-Conspirator A's visit to the vendor in Newburyport, Massachusetts, that was manufacturing the i960 microprocessors.

    (3)    On or about September 15, 2005, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan had a telephone conversation during which they discussed a conversation that **GOPAL** had with Co-Conspirator A concerning the trip to the United States of an official with ADE for the testing of the i960 microprocessors and reimbursement to Cirrus

from the Government of India for expenses related to that trip.

(4) On or about September 30, 2005, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarsan caused Cirrus U.S.A. to ship 15 T110C475K100AS capacitors to Cirrus Singapore for re-export to BDL in India. Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(5) On or about November 5, 2005, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan caused Cirrus U.S.A. to ship 95 T110C475K100AS capacitors to Cirrus Singapore for re-export to BDL in India. Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(6) On or about January 14, 2006, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan caused Cirrus U.S.A. to ship 90 CD4043BF3A semi-conductors to Cirrus Singapore for re-export to BDL in India. Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(7) On or about January 14, 2006, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan caused Cirrus U.S.A. to ship to Cirrus Singapore for re-export to VSSC in India the following items: 100 M39014/01-1284 capacitors, 500 M39014/01-1299 capacitors, 500 M39014/01-1317 capacitors, 800 M39014/01-1535 capacitors, and 600 M39014/01-1553 capacitors. Cirrus U.S.A. did not obtain a license from the Directorate of Defense Trade Controls in the District of Columbia for this export.

(8) On or about March 24, 2006, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan caused Cirrus U.S.A. to ship 30 5962-9560004MXA SRAMs to Cirrus

Singapore for re-export to VSSC in India. Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(9)    On or about April 7, 2006, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan caused Cirrus U.S.A. to ship 200 JAN1N3611 rectifiers and 110 M8340109K6801GC resistors to Cirrus Singapore for re-export to BDL in India. Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(10)    On or about April 7, 2006, defendant**, MYTHILI GOPAL**, and Parthasarathy Sudarshan caused Cirrus U.S.A. to ship 500 M39014/01-1284 capacitors to Cirrus Singapore for re-export to VSSC in India. Cirrus U.S.A. did not obtain a license from the Directorate of Defense Trade Controls in the District of Columbia for this export.

(11)    On or about April 17, 2006, defendant, **MYTHILI GOPAL**, and Parthasarathy Sudarshan caused Cirrus U.S.A. to ship 90 5962-9461110HTA SRAMs and 150 5962-9560004MXA SRAMs to Cirrus Singapore for re-export to VSSC in India. Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(12)    On or about September 19, 2006, defendant, **MYTHILI GOPAL**, spoke with an official at the Department of Commerce in Washington, D.C., in order to obtain information about whether the export of certain commodities to India required a license, and intentionally failed to disclose to the Department of Commerce official that VSSC would be the end-user of the goods in India.

(13)    On or about September 19, 2006, defendant, **MYTHILI GOPAL**, falsely

told a representative of a vendor in Redmond, Washington, that she had spoken with an official at the Department of Commerce who, according to **GOPAL**, advised her that the export to VSSC of various components that the vendor sold did not require a license.  **GOPAL** further falsely represented to the vendor that she had told the Department of Commerce official that the end-use of the components would be in a satellite launch vehicle.

(**Conspiracy to Violate the International Emergency Economic Powers Act and the Export Administration Regulations and to Violate the Arms Export Control Act and the International Traffic in Arms Regulations**, in violation of Title 18, United States Code, Section 371.)

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY
        D.C. Bar No. 498610


By:_____/s/_____
    Jay I. Bratt
    Assistant United States
    Attorney Illinois Bar No.
    6187361 National Security
    Section Room 11-437 555
    Fourth Street, NW Washington,
    D.C.  20530 (202) 353-3602
    Jay.Bratt@usdoj.gov


             /s/
    Anthony Asuncion
    Assistant United States
    Attorney D.C. Bar No. 420822
    National Security Section Room
    11-844 555 Fourth Street, NW
    Washington, D.C.  20530 (202)
    514-6950

Anthony.Asuncion@usdoj.gov