UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEALED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-0292 (RMU) |
| v. | : | |
| MYTHILI GOPAL, | : | 07-0292 |
| Defendant. | : | FILED OCT 30 2007 NANCY MAYER WHITTINGTON, CLERK U S DISTRICT COURT |

### FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

Sometime in or around 2003, the defendant, Mythili Gopal, began doing work for Cirrus Electronics Pte Ltd. ("Cirrus Singapore"), a company in Singapore that her brother-in-law Parthasarathy Sudarshan owned. Cirrus Singapore was in the business of acquiring electronic components from U.S. vendors and manufacturers and exporting those commodities through Singapore to Indian government entities in India. Ms. Gopal lived in Simpsonville, South Carolina. Her work for Cirrus Singapore involved receiving shipments of products from U.S. vendors, repackaging those items, and then sending them to Singapore for re-export to India. As time went on, Ms. Gopal also began having direct contact with the vendors. On or about November 19, 2003, at Mr. Sudarshan's request, Ms. Gopal incorporated Cirrus Electronics LLC ("Cirrus U.S.A.") in the State of South Carolina and assisted in conducting the company's U.S. business out of her home. In January 2004, Cirrus U.S.A. became a wholly-owned subsidiary of Cirrus Singapore.

Beginning in early 2004, Ms. Gopal began to understand that Cirrus was not fully complying with U.S. export control laws. In particular, in March 2004, Ms. Gopal participated in Cirrus' purchase of night vision filters from a company in Fountain Valley, California, for export

to India. During this transaction, Ms. Gopal learned that certain components with military applications, such as the night vision filters that Cirrus was purchasing, required a license from the U.S. government before Cirrus could export them. She also learned that India was a sensitive country for exports of these types of commodities. Ms. Gopal was aware that Cirrus was selling products that it was acquiring in the United States to entities in India that were part of India's defense industry. With respect to the night vision filters, the vendor in California refused to export the product to Cirrus without first obtaining an export license, and it eventually obtained a license from the U.S. State Department. However, Ms. Gopal knew that Cirrus was not seeking licenses for any of the other goods that it was exporting and that it was not seeking guidance as to whether licenses were necessary for any of these exports. Ms. Gopal further learned from the California vendor that exporters of certain defense items needed to register with U.S. State Department. Cirrus never registered itself with the State Department.

In the fall of 2004, Ms. Gopal also learned that Cirrus had been providing false end-user statements to a vendor in Phoenix, Arizona, that had been supplying Cirrus with Static Random Access Memory ("SRAM") chips. The customer for the SRAMs was the Vikram Sarabhai Space Center ("VSSC") in India. VSSC was, and continues to be, on the Department of Commerce Entity List, and exports of the SRAMs to VSSC require a license. The end-user statements that Cirrus had provided the vendor of the SRAMs falsely stated that the items were for the Naval Physical Oceanographic Laboratory ("NPOL") in India. The vendor discovered that the end-user certificates were false and advised Cirrus that it would no longer do any business with the company. The vendor also threatened to inform the Department of Commerce of Cirrus' illegal activities. Rather than complying with export requirements for future sales of SRAMs to VSSC,

Cirrus instead sought an alternative U.S. supplier for the SRAMs and continued to export the products to VSSC through Singapore without first obtaining approval from the United States government. Ms. Gopal assisted with this scheme by arranging to ship the SRAMs from South Carolina to Cirrus Singapore per instructions of Sampath Sundar or Parthasarathy Sudarshan, knowing that Cirrus Singapore would immediately re-export the goods to VSSC in India and knowing that no one at Cirrus had obtained a license for these exports.

During the time that Ms. Gopal was working for Cirrus, she came to understand that the reason Cirrus was exporting restricted commodities to India through Singapore, rather than directly to India from the United States, was that certain commodities were restricted and could not be sent to India from the United States. In order to further the export scheme, Ms. Gopal falsely suggested to vendors that items would remain in South Carolina or were being exported to Singapore, even though she knew that the goods were for customers in India.

One of Ms. Gopal's duties at Cirrus was to prepare the necessary paperwork for exports. This documentation included Shipper's Export Declarations ("SEDs") and other forms that accompanied each shipment and that were available for inspection by U.S. Customs and Border Protection. When the forms asked for the ultimate destination and consignee of a shipment, Ms. Gopal routinely falsely represented that the goods were for Cirrus Singapore, when, in fact and as she knew, Cirrus Singapore would be re-exporting the items to customers in India. She knew that these false entries on the paperwork would prevent U.S. government inspectors from learning the true destination of Cirrus' shipments.

In September 2006, Cirrus had several orders pending with a vendor in Redmond, Washington. The products that Cirrus had ordered from the vendor were for VSSC, and the

-3-

vendor had insisted on obtaining licenses from the Department of Commerce before sending the goods to Cirrus. In order to expedite the transaction, Ms. Gopal called the Department of Commerce and inquired about whether the products at issue needed a license for export to VSSC. In speaking with a representative from the Department of Commerce, Ms. Gopal invented an end-use for the commodities and intentionally refrained from telling the Commerce representative that the goods were for VSSC. After the Department of Commerce representative indicated that an export of the items to India likely would not require a license, based upon the incomplete information that Ms. Gopal provided, Ms. Gopal called one of the salespeople at the Redmond, Washington, vendor and advised the salesperson about what she had learned from the Department of Commerce, specifically that no export license was needed. Ms. Gopal made the false representations in an attempt to induce the vendor to facilitate an otherwise unlawful export.

### DEFENDANT'S ACKNOWLEDGMENT

I have read and discussed this Factual Proffer in Support of Guilty Plea fully with my attorney, Anjali Chaturvedi. I agree, and acknowledge by my signature, that this proffer of fact is true and accurate for the purpose of the plea of guilty in this case.

Date: 10/30/07

_____
Mythili Gopal
Defendant

Date: 10/30/07

_____
Anjali Chaturvedi, Esq.
Attorney for Mythili Gopal