IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-292 (RMU) |
| | : | |
| v. | : | UNDER SEAL |
| | : | |
| MYTHILI GOPAL, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

### Introduction

Defendant Mythili Gopal has pled guilty to a one-count Information arising out of her participation in an export scheme masterminded by her former co-defendant, Parthasarathy Sudarshan. The Information charges her with a conspiracy under 18 U.S.C. § 371 to violate the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the Entity List restrictions that the Department of Commerce enforces through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705. The conspiracy involved supplying restricted Entity List organizations in India with U.S. origin technology, including ballistic missile and fighter jet components.

The Probation Office has determined that Gopal's total offense level is 23. Contemporaneously with this memorandum, the government is filing a motion under § 5K1.1 to reflect Gopal's substantial assistance to the government. In addition, as part of its plea agreement, the government agreed to recommend that Gopal receive a 2-level reduction pursuant to § 3B1.2(b) for having played a minor role in the offense. The Probation Office has rejected this recommendation. We continue to believe it is appropriate. We address the issues of substantial assistance and minor role adjustment below.

Our ultimate recommendation is that Gopal be granted the 2-level reduction for minor role, as well as an 11-level reduction for her substantial assistance. The resulting Guideline Offense Level would be 10. The resulting sentencing range (6-10 months), in light of Gopal's unique set of circumstances, would comport with the factors set forth in 18 U.S.C. § 3553(a) and would properly account for her crimes.

## Argument

### I.     Gopal Has Provided Substantial Assistance to the Government

Gopal truly did provide substantial assistance in this case. Within a short time after her arrest, her attorneys approached the government about the possibility of her providing cooperation to the government. A series of debriefings followed. In the course of these debriefings, Gopal provided the government with very important information that would have been extremely helpful if the case against Sudarshan had gone to trial. She described how Sudarshan had established Cirrus and about how he had used its U.S. office to circumvent export controls. One of the challenges the government faced in this case was the voluminous amount of records that Cirrus generated for each transaction as it acquired goods in the United States, sent them to Singapore, and then transshipped the items to India. The computer records alone filled several hard drives. Searches in South Carolina yielded over 40,000 pages of documents. Although the government likely would have been able to authenticate the necessary records and get them admitted at trial, Gopal was invaluable in describing how Cirrus' intricate record keeping procedures – with separate invoices and purchase orders for each office in the chain of an export – actually worked. She also described how Cirrus set up its computer records to

enable employees in India to generate purchase orders that it made it appear as if orders were coming from the United States. Gopal would have been a very important witness at trial.

We are also certain that Gopal's decision to plead guilty and cooperate directly influenced Sudarshan's decision to plead guilty as well. Gopal would have testified about Sudarshan's knowledge of the export restrictions that affected Cirrus' business. She also would have testified that, when she misled vendors about the true destination of Cirrus' products, she informed Sudarshan, who praised her efforts. Also, by pleading guilty and admitting at trial that she knew the conduct in which she was engaging was illegal, Gopal made it difficult for Sudarshan, who dealt with many of the same vendors and heard many of the same warnings about U.S. export controls, to contend that he did not know that he was violating the law. Gopal's attorney's met with Sudarshan's lawyers and gave them a preview of what she would say at trial. A short time later, Sudarshan agreed to plead guilty and cooperate.

Gopal and her counsel also contacted her co-defendant Sampath Sundar, who has been a fugitive in India. Sundar is another of Gopal's brothers-in-law. Gopal was under instruction not to discuss the merits of the case with Sundar but to advise him that he could have counsel in the United States and that the government was interested in negotiating cooperation with counsel. Sundar did not pursue this option.

The government is satisfied that Gopal provided as much assistance as was possible. That assistance was invaluable in obtaining the conviction of the lead defendant in this matter.[1]

---

[1] Sudarshan's Guideline offense level was 27, with a sentencing range of 70-87 months. There was, however, an applicable 5-year statutory cap. In addition, the government filed a motion under § 5K1.1 to reflect Sudarshan's substantial assistance to the government. The government recommended that this Court reduce Sudarshan's sentence by an additional 12 to15 months. The Court granted the motion and sentenced defendant to 35 months of incarceration.

Moreover, she cooperated much earlier in the process than Sudarshan and should receive an appropriate sentencing consideration.

## II.   A Two-Level Adjustment for Minor Role Is Appropriate

The Sentencing Guidelines permit a sentencing judge to decrease a defendant's offense level by two points if the judge finds that the defendant was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b); see also United States v. Washington, 106 F.3d 983, 1017 (D.C. Cir. 1997) (noting that under the Guidelines a court may reduce a defendant's offense level if it finds the defendant's culpability was minor compared to the other participants in the offense). Before it may find that a defendant was a minor participant in the offense, however, the evidence available to the court at sentencing must, at a minimum, show first, that the "relevant conduct" for which the defendant would be otherwise accountable involved more than one participant and second, that the defendant's culpability for such conduct was relatively minor compared to that of the other participants. United States v. Caballero, 936 F.2d 1292, 1299 (D.C. Cir. 1991). The application of section 3B1.2 is inherently fact-bound and largely committed to the discretion of the trial judge. Id.

A close examination of the facts in this case, all of which may not have been available to the Probation Officer, compels the conclusion that Gopal played a minor role in the conspiracy. Gopal's indicted co-conspirators include the lead defendant, Sudarshan, who founded Cirrus in Singapore in 1997. He was Cirrus' CEO, Managing Director, and President. In December 2004, he moved from Singapore to the United States and worked out of Cirrus U.S.A.'s offices in Simpsonville, South Carolina, which was staffed by Gopal. In addition to Sudarshan, Gopal's

still at large co-defendants include AKN Prasad, who formally opened Cirrus India in Bangalore and was CEO of India Operations, and Sampath Sundar, who was Cirrus' Director of Operations and worked principally out of Cirrus Singapore's office. Gopal did not direct any co-conspirators. Gopal held the title of International Sales Manager for Cirrus. In reality, she was little more than an officer manager for Cirrus' Simpsonville, South Carolina, office and an assistant to Sudarshan. Gopal had moved to South Carolina when her husband got a job in the state. She is Sudarshan's sister-in-law. At one point, Sudarshan asked her to open a branch of Cirrus there. It was Sudarshan's intent to use this branch to aid him in acquiring U.S. origin technology without alerting vendors that the goods were meant for export. In November 2003, Gopal incorporated Cirrus in South Carolina. Gopal was acting at the direction of Sudarshan, and her role was essentially ministerial, as the paperwork and process was handled by an attorney hired by Cirrus. Gopal began receiving shipments from vendors in the United States, which she forwarded to Cirrus in Singapore for re-export to restricted entities in India. Over time, through her contacts with U.S. suppliers, Gopal came to learn that many of the items that Cirrus was exporting and many of the ultimate end-users in India were subject to export restrictions. She also realized that Cirrus was not obtaining the necessary export licenses for these transactions.

     Gopal's role was mostly an administrative one – paying invoices, packing shipments, and dealing with the freight forwarders. On occasion, however, she would mislead vendors about the true destination of the products Cirrus was acquiring or about the end-users.

     It is important to note that it was Sudarshan who profited enormously from the conspiracy. In contrast, Gopal profited little from her activities with Cirrus, never earning more

than $20,000 per year and declining to be paid toward the end of the scheme.  In fact, at the time of his arrest, U.S. Citizenship and Immigration Services had denied Sudarshan's application to extend his visa – which permitted him to be in the United States as an "executive" of a foreign business – in part because he could not show he was paying any employees here.

Based on all of the facts and circumstances of which we are aware, it is clear that Gopal did not play a pivotal or essential role in the success of the conspiracy.  Her criminal conduct fits neatly within the definition of "minor participant" under § 3B1.2(b).


### III.     An Analysis of the Factors Enunciated in 18 U.S.C. § 3553(a)

#### A.     The Legal Standard

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court ruled that the Guidelines are no longer mandatory.  In the remedy portion of the opinion, however, the Court also made it clear that, in determining the appropriate sentence for a defendant, the district court judge must calculate and consider the applicable guidelines range, refer to the pertinent Sentencing Commission policy statements, and bear in mind the need to avoid unwarranted sentencing disparities.  Although the judge must also weigh the factors enunciated in 18 U.S.C. § 3553(a), "it is important to bear in mind that *Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice to be consulted or overlooked at the whim of a sentencing judge."  United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005).  As one member of this Court has held, "Booker requires judges to engage in a two-step analysis to determine a reasonable sentence."  United States v. Doe, 413 F. Supp.2d 87, 90 (D. D.C. 2006) (Bates, J.)

> [A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.  Then, the court shall consider that

> range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing sentence.

United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005).

After Booker, in resolving issues under the guidelines, the Court continues to use a preponderance of the evidence standard, and consideration of acquitted or uncharged conduct remains appropriate.  United States v. Dorcely, 454 F.3d 366, 372 (D.C. Cir.), cert. denied, 127 S. Ct. 691 (2006).  See also In re Fashina, 486 F.3d 1300, 1305 (D.C. Cir. 2007) (preponderance of the evidence standard).

When weighing the § 3553(a) factors as part of its calculus of an appropriate sentence, the Court should consider not only the nature and circumstances of the offense and the history and characteristics of the defendant, but also the applicable sentencing objectives – that is, that the sentence:  (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with needed educational or vocational training and medical care.  See 18 U.S.C. § 3553(a)(1) and (2).  In addition, the sentence should reflect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

### B.     The Unique Facts and Circumstances of this Case

Gopal's crimes were exceedingly serious.  The conspiracy involved violations of export controls that are critical to our national defense.  The purpose of AECA is the "furtherance of world peace and the security and foreign policy of the United States."  22 U.S.C. § 2778(a)(1).

Entity List restrictions enforced through the EAR aim to stem the proliferation of nuclear weapons and the development of the missile systems necessary to deliver those weapons. The Sentencing Commission has reflected the seriousness of the violations here by assigning a high base offense level to all export crimes that implicate national security and non-proliferation interests. There is no question that Gopal has pled guilty to a crime with grave national security implications. The goal of the conspiracy was to put sophisticated U.S. technology in the hands of prohibited foreign entities, prohibited precisely for proliferation reasons. The overall gravity of the offense combined with the desire to serve as a strong deterrent to others who might be tempted to violate the export laws would, under ordinary circumstances, lead the government to seek a severe sentence. A close and careful look at the actual actions taken by Gopal, however, makes it clear that Gopal's situation is not ordinary. As noted above, she played a very small role in the overall conspiracy. The government harbors no doubt that even without her, the conspiracy would have existed, the goods would have been shipped overseas, and the crimes would have been committed. The uniqueness of Gopal's situation, along with the substantial assistance she provided, suggest that significant leniency in sentencing is appropriate and just.

## **Conclusion**

We recommend an 11-level departure for substantial assistance, combined with a 2-level reduction for minor participant. We would ask the Court to enter a sentence of probation with six months of home confinement as a condition of probation. We realize that the underlying charges here are very serious; the home confinement component of the probation reflects this fact. For the foregoing reasons, the Court should sentence Gopal as recommended in this

memorandum and in the government's departure motion.

                               Respectfully submitted,

                               JEFFREY A. TAYLOR
                               United States Attorney
                               D.C. Bar No. 451058

By:       /s/
                               JAY I. BRATT
                               Assistant United States Attorney
                               Illinois Bar No. 6187361
                               jay.bratt@usdoj.gov


                               /s/
                               ANTHONY ASUNCION
                               Assistant United States Attorney
                               D.C. Bar No. 420822
                               anthony.asuncion@usdoj.gov

                               National Security Section
                               555 4th Street, NW – 11th Floor
                               Washington, D.C.  20530



                               /s/
                               CLIFFORD I. RONES
                               Senior Trial Attorney
                               Md. Bar No. 8506010284
                               Counterespionage Section
                               U.S. Department of Justice
                               1400 New York Avenue, NW
                               Washington, D.C. 20530
                               clifford.rones@usdoj.gov

## Certificate of Service

I, Anthony Asuncion, certify that I caused to be served a copy of the foregoing Government's Sentencing Memorandum by electronic means on counsel of record for defendant Gopal this 31st day of July, 2008.

                                                    /s/
                                         Anthony Asuncion